IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Arbitration under the North American Free Trade Agreement (NAFTA) between<br><br>INTERNATIONAL THUNDERBIRD GAMING CORPORATION,<br><br>　　　　　　　　　　　　Petitioner,<br>　　vs.<br><br>THE UNITED MEXICAN STATES, Represented by the Secretaria de Economía<br>Alfonso Reyes No. 30<br>Col. Condesa<br>06179 Mexico D.F.<br>Mexico<br><br>　　　　　　　　　　　　Respondent. | Case No.: 1:06-cv-000748 (HHK) |

**REPLY OF THE GOVERNMENT OF MEXICO IN SUPPORT
OF CROSS-MOTION FOR CONFIRMATION,
<u>RECOGNITION AND ENFORCEMENT OF ARBITRAL AWARD</u>**

Stephan E. Becker (D.C. Bar No. 366676)
Anne E. Langford (D.C. Bar No. 492271)
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000

Counsel for United Mexican States

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 3

I. THE AWARD CAN BE CONFIRMED, RECOGNIZED AND ENFORCED SIMULTANEOUSLY TO THE DISMISSAL OF THE MOTION TO VACATE ........... 4

II. THE PETITIONER HAS LEFT UNSUPPORTED MOST OF ITS ARGUMENTS AGAINST CONFIRMATION AND ENFORCEMENT ......................... 4

    A. The Petitioner Has Not Supported Its Section 10(3) Arguments ..................................... 4

    B. The Petitioner Has Not Supported Its Argument Regarding the Award of Costs ........... 6

III. THUNDERBIRD'S NEW ARGUMENT REGARDING DEPOSITIONS IS COMPLETELY UNSUPPORTED ................................................................................. 6

IV. THUNDERBIRD'S REPLY/OPPOSITION MEMORANDUM FAILS AS A MATTER OF LAW TO REBUT MEXICO'S CLAIM THAT THE AWARD SHOULD BE ENFORCED. ......................................................................................... 7

CONCLUSION ..................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page**

*Alston v. UBS Fin. Servs., Inc., Civ. A. No. 04-01798, 2006 U.S. Dist. LEXIS 656
    (D.D.C. Jan. 2, 2006) ............................................................................................... 4, 10

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,
    333 F.3d 383 (2d Cir. 2003) ............................................................................................ 10

*LaPrade v. Kidder, Peabody & Co., 246 F.3d 702 (D.C. Cir. 2001) ............................................ 7

LaPrade v. Kidder, Peabody & Co., 94 F. Supp. 2d 2 (D.D.C. 2000) ................................. 4, 11, 12

*Ruppert v. Deutsche Bank Sec., Inc., Civ. A. No. 04-02255,
    2005 U.S. Dist. LEXIS 16871 (D.D.C. July 11, 2005), aff'd,
    2006 U.S. App. LEXIS 20162 (D.C. Cir. Aug. 6, 2006) ............................................... 7-8

Teamsters Local Union No. 61 v. UPS, Inc., 272 F.3d 600 (D.C. Cir. 2001) ............................... 12

*Denotes cases chiefly relied upon

Pursuant to LCvR 7, Respondent and Cross-Movant the United Mexican States ("Mexico") hereby submits this Reply in support of its Cross-Motion for Confirmation, Recognition, and Enforcement of Arbitral Award (ECF Doc. No. 8).

This Reply is accompanied by the Supplemental Declaration of Stephan E. Becker ("Becker Suppl. Decl."), Exhibit 1 hereto.

## INTRODUCTION

Although the Court is now familiar with the facts underlying the arbitration at issue, it bears repeating that the dispute arose out of an attempt by Petitioner International Thunderbird Gaming Corporation ("Thunderbird") to open casinos in Mexico. Mexican law prohibits casino-type gambling, and accordingly the Mexican authorities closed the casinos. Notwithstanding (i) that the machines used in the casinos were video poker and video slot machines (with images of spinning reels),[1] (ii) that customers fed dollar bills into the machines and could win tickets exchangeable for cash,[2] and (iii) that the machines contained random number generators that could be adjusted by the casinos to regulate the levels of winning,[3] Thunderbird persisted in pursuing a legal theory that the machines should be labeled as "skill games" and that such machines should not be considered to involve gambling. After failing with this theory in

---

[1] See Mem. in Supp. of Respt's Cross-Motion, ECF Doc. No. 8, at 8 and Becker Decl., Exhibit 1 thereto at Tab 2 (Tr. at 486:8-19; 505:10-507:10, 510:3-511:9, 523:4-523:20) and photographs at Tab 8.

[2] See Mem. in Supp. of Respt's Cross-Motion, Exhibit 1, Tab 1 at ¶¶ 153, 154.

[3] See id. at ¶ 136:
"The Tribunal notes that the machines operated by EDM are equipped with computerised random number generators and that it is possible to set the level of payouts, and thus the odds for winning. For example, the Bestco "Fantasy 5 Game Manual" that was found at the EDM-Laredo Facility provides that the default base pay rate "is set to 75%. This can be changed to a value within the range of 50%-95%." (Ex. R-15, p. 13) The Tribunal notes further that the machine's percentage of payout is not visible or otherwise known to the player (see McDonald at Tr. 498-502). The Tribunal infers that the operation of these video game machines with a built-in and modifiable random number generator involves a considerable degree of chance, and that by adjusting the payout rate, the machine operator can manipulate the odds for winning regardless of the skill of the player."

Mexico, it presented the same arguments to the NAFTA arbitral tribunal, this time claiming that the Mexican enforcement actions to prohibit gambling constituted a violation of international law. Notwithstanding the considerable information available on the practice of NAFTA and other international tribunals, Thunderbird apparently was surprised that there could be consequences for initiating a meritless arbitration proceeding – namely, the awarding of costs to the Respondent. Thunderbird's attempt to have this Court vacate the award is similarly meritless, and plainly has been undertaken in a transparent effort to delay enforcement of the award against it.

The Memorandum of Points and Authorities of Petitioner International Thunderbird Gaming Corporation (1) In Reply to Opposition of the Government of Mexico to Motion to Vacate Arbitration Award and (2) in Opposition to Cross-Motion for Confirmation, Recognition, and Enforcement of Arbitration Award ("Thunderbird Reply/Opp'n Mem.," ECF Doc. No. 14) did not address the vast majority of the content of Mexico's Memorandum of Points and Authorities in Opposition to Motion to Vacate and in Support of Cross-Motion for Confirmation, Recognition, and Enforcement ("Mem. in Supp. of Respt's Cross-Motion," ECF Doc. No. 8). Rather, the Thunderbird Reply/Opposition Memorandum focuses primarily on a single issue: whether the arbitral tribunal was obliged to make factual findings adverse to Mexico because it did not present testimony from government officials who had been involved in preparing a single letter sent to Thunderbird's Mexican affiliate in 2000. As discussed below, the Petitioner's arguments are unsupported by the record of the arbitration and by the applicable law. As a result, Respondent's Cross-Motion should be granted.

2

# ARGUMENT

The Thunderbird Reply/Opposition Memorandum did not contain any comments on the jurisdictional issues raised by Mexico's Cross-Motion (See Mem. in Supp. of Respt's Cross-Motion at 1-2), and therefore Thunderbird apparently concedes Mexico's positions on those issues. The Thunderbird Reply/Opposition Memorandum also does not contain any disagreement with the facts presented by Mexico relating to the circumstances under which Thunderbird initiated the arbitration and agreed to the arbitral procedures, the manner in which the arbitration proceeding was conducted, and the issues that were presented to the tribunal. (See Mem. in Supp. of Respt's Cross-Motion at 2-10).

The Thunderbird Reply/Opposition Memorandum focuses on one purported ground for setting aside and not confirming the arbitration award: the question of whether the arbitral tribunal "manifestly disregarded the law" in the manner in which it administered the burden of proof. It also introduces a superficial and unsupported new argument regarding its ability to take depositions during the arbitration. Thunderbird has thus apparently abandoned the other purported grounds for not confirming the award that it advanced earlier.

The first section below addresses an argument in Thunderbird's Reply/Opposition regarding the timing of Respondent's filing of its Cross-Motion. The second section reviews the arguments against enforcement of the award that the Petitioner has apparently abandoned. The third section responds to a new argument regarding depositions raised by the Petitioner for the first time in the Thunderbird Reply/Opposition Memorandum. The fourth section addresses Petitioner's deficient burden of proof argument.

I. **THE AWARD CAN BE CONFIRMED, RECOGNIZED AND ENFORCED SIMULTANEOUSLY TO THE DISMISSAL OF THE MOTION TO VACATE**

Mexico has moved for recognition, confirmation and enforcement of the award under both Section 9 of the Federal Arbitration Act and Article IV of the New York Convention. The Petitioner responds by claiming that the Court is without authority to confirm the award until its Motion to Vacate is resolved. (Thunderbird Reply/Opp'n Mem. at 9-10). Mexico has properly cross-moved for confirmation and enforcement, and it is entirely appropriate for the Court to issue an order of confirmation and enforcement simultaneously to its dismissal of a motion to vacate, as this Court has done on numerous occasions. *See, e.g.*, Alston v. UBS Fin. Servs., Inc., Civ. A. No. 04-01798, 2006 U.S. Dist. LEXIS 656, at *18 (D.D.C. Jan. 2, 2006); LaPrade v. Kidder, Peabody & Co., Inc., 94 F. Supp. 2d 2, 8 (D.D.C. 2000).

Petitioner's Motion to Vacate and Respondent's Cross-Motion for Confirmation, Recognition and Enforcement are "two sides of the same coin," and the Court's resolution of one motion resolves the other as well. If the award is not set aside, it must be confirmed.

II. **THE PETITIONER HAS LEFT UNSUPPORTED MOST OF ITS ARGUMENTS AGAINST CONFIRMATION AND ENFORCEMENT**

A. **The Petitioner Has Not Supported Its Section 10(3) Arguments**

Thunderbird's Reply/Opposition Memorandum fails to support several claims on which it previously relied in arguing that the arbitration decision was flawed. For example, Thunderbird previously argued that the arbitration tribunal engaged in misconduct under Section 10(3) of the Federal Arbitration Act by (i) allegedly making a finding that Thunderbird's machines were illegal after the parties had agreed that it lacked authority to make a ruling on the legality of the machines, and (ii) allegedly implying that the success fee arrangement between Thunderbird and Messrs. Aspe and Arroyo involved a bribe.

With regard to the argument concerning the legality of the machines, Mexico demonstrated that the tribunal had in fact not ruled that the machines were illegal, but indeed had conscientiously avoided making such a ruling. Rather, the tribunal made findings regarding the physical characteristics of the machines – findings that Thunderbird itself had expressly requested – in connection with its assessment of whether Thunderbird had proceeded with its investment with a "legitimate expectation" that the Mexican Government would not view the machines as gambling equipment. Moreover, Thunderbird had not attempted to tie the findings of the tribunal to the applicable legal standard of Section 10(3). (Mem. in Supp. of Respt's Cross-Motion at 18-19).

With regard to the argument concerning an alleged bribe, Mexico demonstrated that the Petitioner had again mischaracterized the tribunal's award, which did not contain any findings or even a statement suggesting that it believed a bribe had been paid. The Respondent also showed that Mexico had never alleged that Thunderbird had bribed a government official, but rather that certain private individuals had led Thunderbird to believe that they could obtain some type of special treatment for Thunderbird's Mexican affiliate. Mexico of course was not responsible for the conduct of those private individuals or the representations they made to Thunderbird. (Mem. in Supp. of Respt's Cross-Motion at 20).

The Thunderbird Reply/Opposition Memorandum fails to engage these points and it therefore appears that the Petitioner has abandoned its arguments against confirmation arising under Section 10(3).

5

### B. The Petitioner Has Not Supported Its Argument Regarding the Award of Costs

Thunderbird had also claimed that the tribunal's award of costs to Mexico was a manifest disregard of the law justifying the setting aside of the award. In its Cross-Motion Mexico demonstrated, by citing to numerous precedents, that there is an established practice of awarding costs to successful parties, including respondent parties, in both NAFTA arbitrations and international commercial arbitrations conducted under the UNCITRAL Arbitration Rules. The Petitioner did not mention the award of costs issue in its Reply/Opposition Memorandum, and apparently has abandoned that argument as well.

### III. THUNDERBIRD'S NEW ARGUMENT REGARDING DEPOSITIONS IS COMPLETELY UNSUPPORTED

The Petitioner asserts in its Reply/Opposition Memorandum, for the first time, that the tribunal prevented it from deposing Mexican government officials. (Thunderbird Reply/Opp'n Mem. at 4). This new claim must fail because the Petitioner did not – and could not – cite to any evidence in support of its assertion. In fact, during the First Session of the arbitration, at which the procedures of the proceeding were established, there was the following exchange between the Petitioner's counsel and the President of the tribunal:

> PRESIDENT van den Berg: Then, on that matter, Mr. Crosby, I noticed in your brief that you mentioned also depositions. It is unusual, actually never practiced in international arbitration that depositions are being taken, nor are, for example, interrogatories. So, I think that is not something which the Tribunal contemplates in this proceeding, unless you have some very compelling reason you would like to do it differently, but then you should make an transaction [sic] application to this Tribunal.
>
> MR. CROSBY: No, that will be fine. I will accept the Tribunal's relation [sic] on that.

(Becker Suppl. Decl., Exhibit 1 hereto at Tab 1, Apr. 29, 2003 Hearing Tr. at 134-35). Thus, the Petitioner's counsel was offered the opportunity to make an application to take depositions and declined to do so.[4] The Petitioner cannot now be heard to complain (i) that it was entitled to take depositions that it never requested, or (ii) about the procedures governing an arbitration that it initiated with full knowledge of the applicable rules.

IV. **THUNDERBIRD'S REPLY/OPPOSITION MEMORANDUM FAILS AS A MATTER OF LAW TO REBUT MEXICO'S CLAIM THAT THE AWARD SHOULD BE ENFORCED.**

The Petitioner has chosen to focus its Reply/Opposition Memorandum on a single aspect of the arbitral award: its claim that the tribunal improperly applied the burden of proof with respect to the interpretation of the *oficio*, and that to do so was a manifest disregard of the law justifying the setting aside of the award. Mexico previously reviewed the fact that judicial review of arbitration awards is extremely limited, and that a court may vacate an award only if there is a showing that one of the circumstances listed in the Federal Arbitration Act is present or if the arbitrators acted in manifest disregard of the law. LaPrade v. Kidder, Peabody & Co., 246 F.3d 702, 706 (D.C. Cir. 2001). Mexico also previously briefed the manner in which the manifest disregard standard is applied in this court. (Mem. in Supp. of Respt's Cross-Motion at 14-15). Because the Petitioner asserts in its Reply/Opposition that Mexico did not address that standard, we will briefly review it again here.

As stated by this Court, "A party seeking to have an arbitration award vacated on the ground that the arbitrators manifestly disregarded the law must at least establish that the

---

[4] The individuals at issue were no longer employees of the Mexican Government and the Petitioner was free to seek their testimony on its own. The Respondent is unaware whether the Petitioner made any such effort.

arbitrators appreciated the existence of a governing legal principle but expressly decided to ignore it." Ruppert v. Deutsche Bank Sec., Inc., Civ. A. No. 04-02255, 2005 U.S. Dist. LEXIS 16871, at *8 (D.D.C. July 11, 2005), aff'd, 2006 U.S. App. LEXIS 20162 (D.C. Cir. Aug. 6, 2006). The NAFTA tribunal obviously did not "expressly decide to ignore" any governing legal principle. To the contrary, it went to great lengths to set out the standard of the burden of proof it applied. At paragraphs 92 through 95 of the award, the tribunal set out the standard as follows:

> Issue 2. Which of the Parties has the burden of proof for each of the Issues mentioned below?
>
> (i) Thunderbird's position
>
> 92. Thunderbird contends that it has the legal "burden of proof" upon its claims under the applicable rules of international law and that, conversely, Mexico has the legal burden of proof upon any affirmative defences raised. According to Thunderbird, the "burden of producing evidence" shifts upon a sufficient evidentiary showing. Thunderbird alleges further that it has made its *prima facie* showing of the NAFTA violations and that Mexico has failed to meet its burden of producing evidence to rebut such showing.
>
> (ii) Mexico's position
>
> 93. Mexico refers to Article 24 of the UNCITRAL Rules and international case law, arguing that a party asserting a fact or a claim is responsible for providing proof of all the elements thereof, and that the burden of proof may shift to the other Party on the basis of *prima facie* evidence.
>
> (iii) The Tribunal's findings
>
> 94. The present arbitration is governed by the UNCITRAL Rules. Article 24(1) of the UNCITRAL Rules provides:
>
>> Each party shall have the burden of proving the facts relied on to support his claim or defence.
>
> 95. The Tribunal notes that the Parties do not seem to diverge on the principles governing the burden of proof. The Tribunal shall apply the well-established principle that the party alleging a violation of international law giving rise to international responsibility has the burden of proving its assertion[1]. If said Party

adduces evidence that *prima facie* supports its allegation, the burden of proof may be shifted to the other Party, if the circumstances so justify.²

> Fn 1    *See* Bin Cheng, GENERAL PRINCIPLES OF LAW APPLIED BY INTERNATIONAL COURTS AND TRIBUNALS, at p. 302 *et seq.* (1987)
>
> Fn 2    *See* in this regard *Feldman v. Mexico*, Interim Decision on Preliminary Jurisdictional Issues, 6 December 2000, ICSID Case No. ARB(AF)/99/1, http://www.worldbank.org/icsid/cases/feldman_mexico_interim-en.PDF, which quotes *United States – Measures Affecting Imports of Woven Wool Shirts and Blouses from India*, 23 May 1997, WT/DS33/AB/R p. 14, in which the Appellate Body of the WTO stated:
>
>> […] various international tribunals, including the International Court of Justice, have generally and consistently accepted and applied the rule that the party who asserts a fact, whether the claimant or respondent, is responsible for providing proof thereof. Also, it is a generally accepted canon of evidence in civil law, common law and, in fact, most jurisdictions, that the burden of proof rests upon the party, whether complaining or defending, who asserts the affirmative of a claim or defence. If that party adduces evidence sufficient to raise a presumption that what is claimed is true, the burden then shifts to the other party, who will fail unless it adduces sufficient evidence to rebut the presumption.

The tribunal never suggested – either in the award itself or at any other time during the proceedings – that it was declining to apply this standard. Thus, the requirement of <u>Ruppert</u> that the arbitrators have expressly declined to apply a legal principle is not met. The award carefully reviews the pertinent evidence and sets out thoughtfully reasoned factual findings.

Moreover, as Mexico previously explained in its Memorandum in Support of Respondent's Cross-Motion, the tribunal identified an alternative basis for its holding on the issue of "legitimate expectations" – namely, that the evidence established that Thunderbird had <u>not</u> relied on the *oficio* in making its investment, as it had alleged. Rather, Thunderbird had taken significant steps to establish its Mexican affiliate – including importing equipment into Mexico and entering into building leases – well before the *oficio* was even requested. It had also

made further investments after the Mexican Government had initiated enforcement actions against the casinos, and therefore after it had been clearly put on notice that the Mexican Government did not consider the *oficio* to be an authorization. (Mem. in Supp. of Respt's Cross-Motion at 10). Under the legal standards for manifest disregard of the law applied by this Court, an award will be confirmed "if a justifiable ground for the decision can be inferred from the facts of the case," Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 390 (2d Cir. 2003) (cited in Alston, 2006 U.S. Dist. LEXIS 656, at *9). Thunderbird's Reply/Opposition Memorandum does not address this alternate basis for the holding at all.

Fundamentally, the Petitioner's argument boils down to the following allegations: Thunderbird relied on the *oficio* in making its investment; the *oficio* expressly approved the use of the specific machines that were installed in the casinos, the *solicitud* clearly identified those machines, and if Mexico argued to the contrary it was obliged to produce as witnesses the government officials who had reviewed the *solicitud* and produced or approved the *oficio*. Thunderbird's argument, however, requires a presumption that the tribunal agreed that Thunderbird had presented *prima facie* evidence supporting its position. As explained in the Memorandum in Support of Respondent's Cross-Motion, Mexico had pointed out to the tribunal that the *oficio*, on its face, was not an authorization for any specific machines, and in fact contained a warning that slot machines were prohibited. Further, the *solicitud*, on its face, did not describe any specific machine, and omitted highly material facts regarding the machines that Thunderbird installed in the casinos – such as that players could win tickets that could be exchanged for cash. In addition, Mexico submitted to the tribunal photographs of the actual machines showing they were fitted with dollar bill acceptors, a key fact not mentioned in the *solicitud*. (Mem. in Supp. of Respt's Cross-Motion at 8). The tribunal agreed with Mexico that

10

the documents themselves supported Mexico's view that the *oficio* was not an authorization of the machines that Thunderbird installed in the casinos.

Whether or not the tribunal would characterize its decision as a finding that Thunderbird failed to make a *prima facie* case, or rather that Mexico's evidence rebutted Thunderbird's evidence, is immaterial. See LaPrade, 94 F. Supp. 2d at 6 ("In addition, there must be no colorable support for the Panel's award in the record; if it seems that the Panel rejected plaintiff's argument after fair consideration, then plaintiff's showing falls short, and the Court must enter the Panel's judgment."). The key point is that the tribunal found, based on the *oficio's* language and also the content of the *solicitud*, that the *oficio* could not have created a "legitimate expectation" that the Mexican Government had authorized the use of Thunderbird's gambling equipment. Such a finding was well within the scope of the tribunal's authority and duties.[5]

Thunderbird has omitted to address another crucial point raised by Mexico. As noted in the Memorandum in Support of Respondent's Cross-Motion, in an international arbitration proceeding conducted under the UNCITRAL Arbitration Rules, there is not a clear rule that witness testimony is to be preferred over documentary evidence contemporary to the events at issue. (Mem. in Supp. of Respt's Cross-Motion at 16). To the contrary, during the arbitration Mexico pointed out that international arbitration reflects the differing approaches to evidence

---

[5] During the arbitration, Thunderbird attempted to rely on the testimony of Thunderbird's own officers that they had been told by their private sector Mexican consultants that the Mexican Government had given oral assurances that Thunderbird could rely on the *oficio*. But Thunderbird never produced those Mexican consultants as witnesses, and Mexico submitted evidence that Thunderbird had previously threatened legal action against the consultants for making misrepresentations. The tribunal expressly stated that, in the absence of testimony from either Thunderbird's Mexican consultants or the government officials involved in preparing the *oficio*, it could not assume that the documents meant anything other than what they actually said. (Mem. in Supp. of Respt's Cross Motion, Exhibit 1, Tab 1 at ¶ 150). The Petitioner has offered no explanation of why the tribunal should have ignored Thunderbird's own failure to produce its Mexican consultants as witnesses.

between civil law countries such as Mexico and common law countries such as the United States, and that in civil law countries documentary evidence is given much greater weight than witness testimony. (Statement of Rejoinder of the Government of Mexico at ¶¶ 9-13, 73-78, Mem. in Supp. of Respt's Cross-Motion, Becker Decl. at Exhibit 1, Tab 3). Thus, the Petitioner cannot establish that there was a clear and unambiguous governing legal principle requiring the tribunal to rely on witness testimony, let alone to attribute weight to the self-serving testimony of Thunderbird's officers that they had relied on the *oficio*. That reason alone requires the granting of Respondent's Cross-Motion. See LaPrade, 94 F. Supp. 2d at 5 ("The implicit assumption in this test is that 'the law' that the arbitrators ignored is clear and unambiguous.").

Notwithstanding Petitioner's argument in its Reply/Opposition Memorandum that the tribunal improperly applied a legal principle, it is clear that Petitioner is actually seeking a reversal of the tribunal's factual findings on the meaning of the *oficio*. It is well established that neither the Federal Arbitration Act nor the manifest disregard of the law standard contemplate that type of review of an arbitral award. See, e.g., Teamsters Local Union No. 61 v. UPS, Inc., 272 F.3d 600, 604 (D.C. Cir. 2001) ("We have repeatedly recognized that 'judicial review of arbitral awards is extremely limited' and that we 'do not sit to hear claims of factual or legal error by an arbitrator as [we would] in reviewing decisions of lower courts.'" (citations omitted)).[6]

---

[6] It should be noted that, even if Thunderbird had established that the *oficio* was some type of "negative clearance," that alone would not have resolved the actual legal issues before the tribunal – which were whether the Mexican Government's actions had denied national treatment to Thunderbird's Mexican affiliate, denied fair and equitable treatment to that affiliate, or resulted in a compensable expropriation of Thunderbird's investment. (See Mem. in Supp. of Respt's Cross-Motion at 6-7). The Petitioner has not explained to this Court how its complaint about the tribunal's factual findings on the *oficio* relate to the legal questions at issue in the arbitration. The Petitioner perhaps consciously avoided doing so because it

(… continued)

Mexico reiterates that there was more than sufficient evidence to support the tribunal's conclusion that Thunderbird had not met its burden of proof.

## CONCLUSION

During the scheduling hearing held on August 1, 2006, the Court indicated that it would decide after reviewing the parties' filings whether or not oral argument was necessary. The Respondent believes that the issues raised are straightforward and can be resolved without oral argument based on the papers already filed.

For the foregoing reasons, the Government of Mexico respectfully requests that the Court grant its Cross-Motion for Confirmation, Recognition and Enforcement of Arbitral Award, and issue an order recognizing and confirming the award and directing Thunderbird to pay the Government of Mexico the amount of $1,252,862.

Dated:  September 27, 2006                     Respectfully Submitted,

                                               PILLSBURY WINTHROP SHAW PITTMAN LLP

                                               By:     /s/ Stephan E. Becker
                                                       Stephan E. Becker (D.C. Bar No. 366676)
                                                       Anne E. Langford (D.C. Bar No. 492271)

                                                       2300 N Street, N.W.
                                                       Washington, D.C.  20037
                                                       (202) 663-8000

                                                       Counsel for United Mexican States

---

(… continued)
    would highlight that the tribunal's other finding – that Thunderbird had not actually relied on the *oficio* – makes the alleged defect identified by the Petitioner completely irrelevant to the outcome of the arbitration.