UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: Arbitration between<br><br>**INTERNATIONAL THUNDERBIRD GAMING CORPORATION,**<br><br>　　　　　　　　Petitioner,<br><br>　　　　v.<br><br>**UNITED MEXICAN STATES,**<br><br>　　　　　　　　Respondent. | Civil Action 06-00748 (HHK) |

**MEMORANDUM OPINION**

Petitioner International Thunderbird Gaming Corporation ("Thunderbird"), a Canadian corporation, brings this action seeking to vacate and set aside an arbitration award in favor of Mexico. Before the court are Thunderbird's petition to vacate the award [#1] and Mexico's motion for confirmation, recognition and enforcement of the award [#8]. Upon consideration of the petition and motion, the oppositions thereto, and the record of the case, the court concludes that Thunderbird's petition should be denied, Mexico's motion should be granted, and the arbitration award should be confirmed.

**I. BACKGROUND**

Thunderbird, seeking to undertake investment activities in Mexico, sought via a solicitation ("Solicitud") to government officials an opinion ("Opinion") regarding the legality of certain types of entertainment machines. Petition, Ex. C (Menéndez-Tlacatelpa Ltr. to Director General de Gobierno de la Secretaria de Gobernacion, Aug. 3, 2000), Ex. D (Aceves Ltr. to Menéndez-Tlacatelpa, Aug. 15, 2000). As described in the Solicitud, the machines were stand-alone "skill machines" that tested their users' abilities, without the involvement of luck or

betting. Solicitud ¶ 7. In the responsive Opinion, the government opined that so long as the machines functioned as they were described in the Solicitud (that is, without the intervention of luck or gambling), they would be permissible for commercial use and would fall outside the regulatory jurisdiction of the Mexican gaming authority, the Secretariat de Gobernacion. Opinion at 1–2.

After receipt of the Opinion, Thunderbird opened gaming facilities where patrons played at a variety of machines. These machines were primarily of two types: video slot machines (where video representations of wheels spun and the player pushed buttons to stop the reels) and video poker machines. Both of these types of machines were equipped with modifiable computerized random number generators that set the machines' payout rates, which rates were neither visible to nor otherwise known by the machine's users. Shortly after establishment of Thunderbird's facilities, Mexican authorities closed them.

Thunderbird responded by filing a request for an arbitration pursuant to the North American Free Trade Agreement ("NAFTA"), which provides protections to foreign investors against discrimination and expropriation without fair compensation.[1] The arbitration hearings were held in Washington, D.C., and the tribunal issued an award in favor of Mexico, with costs

---

[1] NAFTA establishes a mechanism by which private foreign parties may initiate an arbitration against a party government for violations of the treaty's investment-related nondiscrimination requirements. NAFTA, U.S.-Mex.-Can., Chapter 11, Section B, 32 I.L.M. 605, 639 (1993); *see also* NAFTA Implementation Act, Pub. L. No. 103-182, 107 Stat. 2057 (1993), codified at 19 U.S.C. §§ 3301–3473. In addition to imposing certain procedural requirements, the agreement mandates that, depending on the nationality of the private party and the nation alleged to have violated its obligations, certain rules must apply to NAFTA arbitrations. In this case, NAFTA required that the Thunderbird arbitration be conducted pursuant to the rules of the United Nations Commission on International Trade Law ("UNCITRAL"). NAFTA art. 1120; *see also* UNCITRAL Arbitration Rules, http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/1976Arbitration_rules.html.

and partial fees also assessed in Mexico's favor. Petition, Ex. A ("Award"). The total award amounted to $1,252,862. With this action, Thunderbird petitions the court to vacate the award, arguing that the tribunal acted in manifest disregard of the law. Mexico moves, in turn, for confirmation, recognition, and enforcement of the award pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (2006), and Article VI of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"). *See* 9 U.S.C. § 201 (incorporating the Convention into United States law).[2]

## II. ANALYSIS

### A. Standard of Review

Courts have long recognized that judicial review of an arbitration award is extremely limited. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37–38 (1987); *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1178 (D.C. Cir. 1991). A court may vacate an award only if there is a showing that one of the limited circumstances enumerated in the Federal Arbitration Act ("FAA") is present, or if the arbitrator acted in manifest disregard of the law. *LaPrade v. Kidder, Peabody & Co.*, 246 F.3d 702, 706 (D.C. Cir. 2001). Thunderbird bears the heavy burden of establishing that vacatur of the arbitration award is appropriate. *Al-Harbi v. Citibank, N.A.*, 85 F.3d 680, 683 (D.C. Cir. 1996); *see also LaPrade*, 246 F.3d at 706. Furthermore, in the absence of a legal basis to vacate, this court has no discretion but to confirm the award. 9 U.S.C. § 9; *Bryson v. Gere*, 268 F. Supp. 2d 46, 54 (D.D.C. 2003).

---

[2] This court has subject matter jurisdiction over this action pursuant to the Foreign Sovereign Immunities Act. 28 U.S.C. § 1605(a)(1),(6). Specific personal jurisdiction exists due to the effectuation of service on Mexico. *Id.* § 1330; *see also Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987) ("[U]nder the FSIA, subject matter jurisdiction plus service of process equals personal jurisdiction.").

Thunderbird's primary argument is that the NAFTA panel acted in "manifest disregard of the law" by announcing a particular standard for burdens of proof and then failing to apply that standard. See *Al-Harbi*, 85 F.3d at 682 (manifest disregard standard). Manifest disregard of the law "means more than error or misunderstanding with respect to the law." *Kanuth*, 949 F.2d at 1178. Thus, a party seeking to have an arbitration award vacated on this ground must at least establish that "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *LaPrade*, 246 F.3d at 706 (quoting *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir. 1997)); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003) ("Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.").

**B.     Discussion**

    **1.     Burdens of Proof**

Thunderbird argues that the panel acted in manifest disregard of the law in applying the burden-of-proof standards it adopted. In its award, the panel articulated the following rule:

> The Tribunal shall apply the well-established principle that the party alleging a violation of international law giving rise to international responsibility has the burden of proving its assertion. If said Party adduces evidence that *prima facie* supports its allegation, the burden of proof may be shifted to the other Party, if the circumstances so justify.

Award ¶ 95. Thunderbird alleges that it provided sufficient evidence of a *prima facie* case of violations of international law, and that the tribunal erred when it failed to require Mexico to produce any additional evidence of its own to rebut the presumption arising from that showing.

This argument rests, of course, on the assumption that Thunderbird satisfied its burden to prove a *prima facie* case. Though nowhere in the award does the tribunal articulate in any detail what, precisely, would be required for such a showing to be made, it appears that the tribunal concluded that Thunderbird had not met its initial burden. Thunderbird's claim was essentially one of detrimental reliance: it sought confirmation from officials that it could operate its gaming machines, but was discriminated against when the government, notwithstanding the Opinion providing that confirmation, closed the facilities established in reliance upon the Opinion. Looking only to the Solicitud and Opinion (which were both put into evidence by Thunderbird), along with evidence regarding Thunderbird's investment activities and the nature of the machines at Thunderbird's facilities, the tribunal determined that there was no detrimental reliance. According to the award, the Secretariat did not discriminate when it opined that the machines described in the Solicitud would be legal in Mexico, nor did it discriminate when it closed facilities whose machines materially differed from the Solicitud's descriptions.[3] Nor did Thunderbird reasonably rely to its detriment on the Opinion, since that document dealt only with machines that did not involve luck or gambling, and Thunderbird's actual machines did involve luck. Moreover, Thunderbird's investment activities showed that Thunderbird engaged in its plans to use those machines prior to and regardless of the issuance of the Opinion. Because Thunderbird's own evidence failed to show a violation of international law, additional rebuttal evidence was therefore unnecessary. In any event, for this court to disturb the award, it would

---

[3] It appears that evidence regarding the nature of Thunderbird's machines was submitted by Mexico. To the extent this is true, it demonstrates that even if Thunderbird met its *prima facie* burden, that showing was, in fact, rebutted by evidence submitted by Mexico. Because the tribunal relied on that evidence in reaching its conclusion, it follows that the tribunal did not entirely disregard the burdens of proof.

have to be plainly manifest that the tribunal both (1) determined that Thunderbird had met its *prima facie* burden *and* (2) refused to require Mexico to overcome the resulting presumption of a violation of international law.  Otherwise, this court would be asked to improperly assess the factual question of whether that *prima facie* burden had been met in the first instance.  *See Teamsters Local Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001) (courts do not review "claims of factual or legal error" by arbitrators).  Neither of these actions is apparent from the award, and vacatur is therefore unwarranted.

      2.      **Additional Arguments**

Thunderbird's other arguments are similarly unpersuasive.  First, it contends that Mexico was required to provide witness evidence showing that Mexican officials were misled by the Solicitud and "did not know exactly what Thunderbird intended to do and did not in fact give Thunderbird 'negative clearance' to proceed."  Pet.'s Reply at 3.  Of course, Mexico would only be required to submit such evidence if Thunderbird had made an opposite showing (i.e., that the Solicitud and Opinion granted "negative clearance" for the types of machines actually used by Thunderbird, rather than for the different types of machines actually described in the Solicitud), which Thunderbird apparently did not make.

Second, Thunderbird alleges that the tribunal exceeded its authority by determining that Thunderbird's machines were illegal under Mexican law.  The tribunal made no such determination.  Indeed, it was careful to make this point clear.  Award ¶¶ 125–27.  Its conclusion was that because Thunderbird's machines differed from those described in the Solicitud (and, by extension, the Opinion), a showing of detrimental reliance had not been made.  *Ibid.*  Third, Thunderbird takes issue with a purported "finding" that Thunderbird had engaged in bribery.

Here again, there was no such finding. Indeed, the panel only discussed Thunderbird's "success fee" arrangement in explaining that the tribunal was *not* relying on that evidence in reaching its decision. *Id.* ¶ 150.

### 3. The Award of Costs and Fees

Finally, Thunderbird challenges the award of costs and fees, arguing that prior NAFTA cases show that such awards may go against the initial claimant only in limited circumstances. The relevant rule gives the panel wide discretion to award costs and fees:

> 1. Except as provided in paragraph 2, the costs of arbitration shall in principle be borne by the unsuccessful party. However, the arbitral tribunal may apportion each of such costs between the parties if it determines that apportionment is reasonable, taking into account the circumstances of the case.
>
> 2. With respect to the costs of legal representation and assistance referred to in article 38, paragraph (e), the arbitral tribunal, taking into account the circumstances of the case, shall be free to determine which party shall bear such costs or may apportion such costs between the parties if it determines that apportionment is reasonable.

UNCITRAL Arbitration Rules, art. 40. Undeterred by the rule's plain language, Thunderbird cites prior NAFTA and UNCITRAL arbitrations for the proposition that precedent from those arbitrations has narrowed the rule's wide scope. Nothing in those decisions, however, persuades the court that they have meaningfully narrowed the discretion granted in the rule. Even if Thunderbird had identified such precedent, its argument would still fail, as Thunderbird has not shown that the panel expressly recognized that precedent as controlling and nonetheless refused to apply it. *LaPrade*, 246 F.3d at 706.

## III. CONCLUSION

The tribunal's award was not rendered in manifest disregard of the law. Thunderbird's petition is therefore **DENIED** and Mexico's motion for confirmation is **GRANTED**.

An appropriate order accompanies this memorandum.

                                            Henry H. Kennedy, Jr.
                                            United States District Judge

Dated: February 14, 2007