UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Arbitration under the North American Free Trade Agreement (NAFTA) between<br><br>INTERNATIONAL THUNDERBIRD GAMING CORPORATION<br><br>Petitioner,<br><br>vs.<br><br>THE UNITED MEXICAN STATES,<br><br>Respondent. | Civil Action No. 06-00748 (HHK/AK) |

**PETITIONER INTERNATIONAL THUNDERBIRD GAMING CORPORATION'S OPPOSITION TO RESPONDENT UNITED MEXICAN STATES' MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS**

Although counsel for respondent United Mexican States ("Mexico") was required to discuss in person or by telephone with opposing counsel his anticipated motion to compel and for sanctions, he did not do so. Instead, he proceeded directly to file his motion and to seek sanctions against opposing counsel, even though he was advised previously that his request for sanctions would be deemed frivolous because counsel never advised the conduct that prompted the motion. Because Mexico's motion is not ripe and Mexico's request for sanctions against opposing counsel is without basis, Mexico's motion should be denied and its counsel should be required to reimburse International Thunderbird Gaming Corporation ("Thunderbird") the costs incurred in preparing this response, including its attorney's fees.

**STATEMENT OF FACTS**

In reliance on representations made by Mexican government officials that Thunderbird's gaming facilities would be permissible in Mexico, Thunderbird opened several such facilities in Mexico only to have them closed by the Mexican government soon thereafter. As a result,

Thunderbird filed a request for arbitration pursuant to the North American Free Trade Agreement ("NAFTA"), which protects foreign investors against discrimination and expropriation without fair compensation. In January 2006, after an arbitration hearing was conducted, the NAFTA arbitration tribunal issued an award in favor of Mexico, with costs and fees awarded to Mexico in the amount of $1,252,862.

Thunderbird subsequently petitioned this Court to vacate the award on grounds that the tribunal acted in manifest disregard of the law, and Mexico cross-moved for confirmation, recognition and enforcement of the award. On February 14, 2007, this Court entered judgment denying Thunderbird's petition to vacate the arbitration award and granting Mexico's motion to confirm the award. On March 8, 2007, Thunderbird filed its notice of appeal of the February 14, 2007 judgment.

Despite agreeing, as a signatory to NAFTA, that it would not seek enforcement of an arbitration award until there is no further appeal available to Thunderbird, on March 28, 2007 Mexico served on Thunderbird interrogatories, document production requests and a Rule 30(b)(6) notice of deposition, purportedly "in aid of execution" of the judgment. *See* Mexico's Br., Exh. 2. Consequently, on May 7, 2007, Thunderbird filed in this Court a motion to stay execution of judgment and for protective order, requesting that all proceedings in this matter be stayed and that discovery served by Mexico not be had while the appeal is pending. In light of this motion, on May 18, 2007, counsel for Thunderbird provided counsel for Mexico several days notice that "petitioner will not appear at the Rule 30(b)(6) deposition noticed for 5/22." *See* Mexico's Br., Exh. 4.

On June 20, 2007, the Court denied Thunderbird's motion to stay execution of judgment and for protective order. The next day, counsel for Mexico transmitted a new Rule 30(b)(6) deposition notice (resetting the deposition date to July 24, 2007) and a written request that Thunderbird provide written discovery responses by July 12, 2007. *See* Mexico's Br., Exh. 5. On that same day, Thunderbird's Washington, D.C. counsel (Mr. Mahoney) transmitted an email

to Thunderbird's San Diego, California counsel (Mr. Crosby) and Thunderbird's General Counsel (Mr. Atallah) stating:

> Attached is the court order denying our motion to stay execution and for a protective order. We must now respond to respondent's discovery requests. Please let me know how you would like to proceed. Thanks.

Exhibit 1, attached hereto. On July 8, 2007, Mr. Mahoney again forwarded his June 21, 2007 email to Thunderbird and stated, "Please advise on how you wish to respond to Respondent's discovery requests. . . ." Exhibit 2, attached hereto.

On July 9, 2007, after counsel conferred with Thunderbird, Mr. Mahoney telephoned counsel for Mexico, Stephan E. Becker, and requested consent regarding an extension of time to file Thunderbird's appellate brief. Mexico's Br. at 4. Based on information provided by Thunderbird, Mr. Mahoney represented that Thunderbird was working on the discovery responses but that the Rule 30(b)(6) deposition witness resided in a foreign country and, thus, his deposition would need to be rescheduled. *Id.* By email dated July 10, 2007, counsel for Mexico insisted that Thunderbird provide written discovery responses within three days, *i.e.* by July 12, 2007. Mexico's Br., Exh. 6.

That same day, Mr. Mahoney forwarded this email to Thunderbird and asked Thunderbird to "[p]lease advise." Exhibit 3. The next day, Thunderbird's General Counsel transmitted an email to Mr. Mahoney, stating

> Dear Christopher: I apologize for the lack of communication. I understand that Jim [Crosby] spoke with you today and provided you with certain information concerning how we wish to proceed in this matter:
>
> \*   \*   \*
>
> 2: There is no possible way that I will have responses on the interrogatories by July 12 nor will we produce the person most knowledgeable for a deposition.

3

>3. . . . For the time being, Becker just needs to do what he wants to do to compel discovery.

Exhibit 4, attached hereto. Because Thunderbird was not able to complete its written discovery responses by the July 12, 2007 date insisted upon by counsel for Mexico, it dropped its request that Mexico consent to an extension of time for Thunderbird to file its appellate brief, and instead filed it on the original July 23, 2007 due date.

In the meantime, on July 18, 2007, Mr. Becker emailed a letter to counsel for Thunderbird advising that "we are preparing to file a motion to compel disclosure and for sanctions. As you know, pursuant to Rule 37, both Thunderbird and you as its counsel will be liable for our expenses in preparing and filing the motion, including attorney fees, even if you respond to our discovery requests before the Court grants the motion." Mexico's Br., Exh. 7. In response that same day, Thunderbird's co-counsel, Mr. Crosby, contacted Mr. Becker and advised that there is no Thunderbird representative in the United States who can provide testimony on the topics identified in the amended deposition notice. Mexico's Br., Exh. 8. Moreover, Mr. Crosby advised Mr. Becker,

> As for your threat of sanctions, I would note that Rule 37 only allows sanctions against counsel who "advised" the offending conduct. You do not have, and at no time will have, the evidentiary basis for a request for sanctions against counsel for advising any alleged offending conduct under Rule 37. Take notice that any effort to seek sanctions against either Chris or myself under Rule 37 will be deemed frivolous and will be met with an appropriate response. I see this threat as an improper effort to personalize these matters as between counsel and put pressure on Thunderbird with a threat of sanctions against its attorneys. I also view this threat against Chris and myself as directly at odds with the professional and ethical manner which I believe all counsel on both sides have conducted themselves throughout these proceedings. But, I guess if you want to proceed down that path, we will respond accordingly.

*Id.* (original emphasis). Mr. Crosby further advised that he would take to Thunderbird Mr. Becker's suggestion that Thunderbird "commit" to delivering full written discovery responses

4

"within the next few days" and rescheduling the 30(b)(6) deposition to a "precise date in the near future," and that he would advise Mr. Becker accordingly. *Id;*, Mexico's Br., Exh. 7.

By letter the next day, Mr. Becker effectively acknowledged that he had no evidentiary basis to suggest that counsel had advised any offending conduct under Rule 37. Mexico's Br., Exh. 8. Instead, Mr. Becker vaguely stated that he had "the impression that you [Mr. Crosby] and your client do not take seriously the obligation to comply with discovery requests." *Id*.

Mr. Becker's "impression" regarding counsel was without basis. Indeed, just days later, on July 24, 2007, Mr. Mahoney transmitted Thunderbird's appellate brief to Thunderbird and again requested that Thunderbird "please advise where things stand on Mexico's discovery requests." Exhibit 5, attached hereto. That same day, Thunderbird's General Counsel responded, stating, "Thank you Chris. I will get with Jim [Crosby] and get back with you on the discovery requests and the brief. [T]hanks for burning the midnight oil on this matter!" Exhibit 6, attached hereto.

Before that occurred, however, on August 3, 2007, and without first complying with LCvR 7(m), Mr. Becker filed his motion to compel and for sanctions against opposing counsel. Despite having been put on notice that his request for sanctions against counsel would be deemed frivolous, Mr. Becker chose not to "discuss the anticipated motion with opposing counsel, either in person or by telephone," as required by LCvR 7(m). Instead, he proceeded directly to file a request for sanctions against counsel that is devoid of any factual basis.

**ARGUMENT**

**I.  Mexico's Motion Is Unripe and, Therefore, Should Be Denied**

LCvR 7(m) requires that before filing any nondispositive motion, "counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone," and the movant "shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed."

5

Here, Mexico's counsel ignored LCvR 7(m). Mr. Becker did not discuss his anticipated motion in person or by telephone with opposing counsel, and he did not include in his motion a statement that the required discussion occurred. That alone requires that the motion be denied.

Indeed, had Mr. Becker complied with LCvR 7(m), much if not all of the resulting motions practice could have been avoided. As the record makes clear, Thunderbird's outside counsel was persistent in his communications with Thunderbird that the pertinent discovery requests be answered, and counsel certainly never advised that these requests be ignored. Had Mr. Becker discussed his request for sanctions against counsel with opposing counsel in person or by telephone, this fact would have been made clear to him. Mr. Becker's failure is inexplicable, given Mr. Crosby's earlier admonition that any request for sanctions against Thunderbird's counsel was without basis and would be seen as frivolous. Mexico's Br., Exh. 8. Mr. Becker, however, chose not to discuss his motion in person or by telephone, perhaps because he did not wish to be inconvenienced by unhelpful facts, and wanted only to "put pressure on Thunderbird with a threat of sanctions against its attorneys." *Id.* Such tactics are unacceptable, and are reason enough to deny Mr. Becker's motion.

Thunderbird recognizes the importance of responding to Mexico's written discovery requests, and commits to doing so within 30 days. Thunderbird also commits to producing a Rule 30(b)(6) deponent at a mutually convenient time and place. These commitments could have been discussed personally with Mr. Becker, had he only complied with LCvR 7(m). His failure to do so renders his motion unripe.

### II. Mexico's Request For Sanctions Against Opposing Counsel is Frivolous and, Therefore, Should Be Denied

Although Mexico's motion seeks sanctions against Thunderbird's counsel under Fed. R. Civ. P. 37(a)(4)(A), it is telling that Mexico's brief never discusses the terms of that Rule. That is because Rule 37(a)(4)(A) only allows sanctions against an "attorney advising such conduct [which necessitated the motion]." Here, there is absolutely no evidence that counsel advised Thunderbird to ignore Mexico's discovery requests; indeed, the evidence shows just the opposite.

6

"[A]ny sanctions imposed on attorneys is a matter of serious concern that extends well beyond the monetary issues involved." *Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 185 (3d Cir. 2003). Courts may order sanctions against an attorney "when the responsibility for an unjustifiable position taken with respect to a motion to compel rests solely with [the] attorney." *7 Moore's Federal Practice-Civil,* § 37.23[4][a]. "Under Rule 37, an attorney may only be sanctioned for personally violating a discovery order or for advising a client to do so." *Naviant Marketing Solutions, Inc.*, 339 F.3d at 185. *See also 7 Moore's Federal Practice-Civil*, § 37.23[4][a] ("In fact, an attorney may only be sanctioned for *personally* violating a discovery order or for advising a client to do so") (original emphasis)).

In *Cobell v. Norton,* 213 F.R.D. 16 (D.D.C. 2003), for example, a deponent's counsel repeatedly made groundless assertions of attorney-client privilege, ignored special master findings that the questions were appropriate, improperly attempted to restrict the scope of questioning and obstructed an inquiry into whether her co-counsel lied to the court. *Id.* at 31. Observing that commentators have noted an "increasing interest by federal courts in imposing a sanction against the attorney where the fault is counsel's" and not the party's, the court imposed sanctions against counsel personally. *Id*. at 32.

The two cases cited by Mexico are in accord with this reasoning. *See* Mexico's Br. at 8. In *Lattimore v. Northwest Coop. Homes Ass'n.*, 1992 U.S. Dist. LEXIS 7442 (D.D.C. May 19, 1992), counsel took "virtually no role in supervising his clients' response to discovery" and then misrepresented that the inadequate and inaccurate responses were full and complete. Under those circumstances, the court awarded sanctions against counsel. *Id.* at * 8. Similarly, in *Williams v. Johanns*, 235 F.R.D. 116 (D.D.C. 2006), plaintiffs' counsel prepared "utterly deficient" interrogatory and document production responses. *Id*. at 122-124. Because such conduct exhibited "plaintiffs' counsel's total disregard of his obligations" under the rules, the court ordered him to show cause why he should not be sanctioned. *Id.* at 125.

Here, there is no hint that Thunderbird's counsel advised Thunderbird not to respond to Mexico's discovery requests or otherwise engaged in any misconduct regarding discovery

7

obligations that would warrant the imposition of sanctions on counsel. Counsel properly performed their "affirmative duty to instruct clients of their responsibility in responding to discovery. . . ." *Lattimore*, 1992 U.S. Dist. LEXIS 7442 at * 7. When the Court denied Thunderbird's motion to stay and for protective order, counsel immediately advised Thunderbird that "[w]e must now respond to respondent's discovery requests." Exh. 1. On July 8, 2007, counsel subsequently asked that Thunderbird "advise on how you wish to respond to respondent's discovery requests." Exh. 2. And on July 24, 2007, counsel again requested that Thunderbird "advise where things stand on Mexico's discovery requests." Exh. 5. Although Thunderbird has not yet responded to Mexico's discovery requests, it has not been for want of trying on the part of its counsel. There is no basis, therefore, for imposing sanctions on counsel personally.

In light of this, Mexico is left to distort one word to argue that Mr. Crosby merely "suggested" and did not direct that Thunderbird comply with its discovery obligations. Mexico Br. at 8. Mr. Crosby, however, advised Mr. Becker that he would take Becker's "suggestions to my client and advise you accordingly." Mexico's Br., Exh. 8. Those "suggestions" were that, in order to avoid a motion to compel, Thunderbird "immediately" "commit to delivering full (not evasive) responses to our interrogatories and document requests within the next few days, and to re-scheduling the deposition for a precise date in the near future." Mexico's Br., Exh. 7. Mr. Crosby never downplayed to Thunderbird the importance of responding to discovery, and Mexico's distortion of the pertinent correspondence is too thin a reed to support its request for sanctions. The evidence shows that counsel discharged their duty to instruct Thunderbird of its discovery obligations and never suggested that those obligations be shirked. Mexico's request for sanctions against counsel, therefore, must fail.

### III.    Mexico's Counsel Should Be Ordered To Reimburse Thunderbird the Costs Incurred In Preparing This Response

But for Mr. Becker's failure to comply with LCvR 7(m), Mexico's request for sanctions against Thunderbird's counsel, and perhaps its entire motion to compel, as well as the costs attending this response, could have been avoided. Indeed, despite being advised earlier that his

8

request for sanctions against counsel would be deemed frivolous, Mr. Becker filed his request without first discussing it with opposing counsel or articulating any factual basis therein. This has engendered costs for which Mr. Becker should be held liable.

Under Fed. R. Civ. P. 37(a)(4)(B), if a motion to compel is denied, the moving party or the attorney filing the motion or both of them must pay the opposing party the reasonable expenses incurred in opposing the motion, including attorney's fees, unless certain conditions are met. And under Fed. R. Civ. P. 37(a)(4)(C), if the motion is granted in part and denied in part, the court may apportion the reasonable expenses in relation to the motion among the parties and persons in a just manner.

Here, Mexico's motion is unripe in light of Mr. Becker's failure to comply with LCvR 7(m) and, for that reason alone, it should be denied and Mr. Becker should be required to pay Thunderbird its costs in responding to the motion, including its attorney's fees, pursuant to Fed. R. Civ. P. 37(a)(4)(B). At a minimum, that portion of Mexico's motion seeking sanctions against opposing counsel is entirely without basis and should be denied, and Mr. Becker should be required to pay Thunderbird its costs in responding to this frivolous request for sanctions, including its attorney's fees, pursuant to Fed. R. Civ. P. 37(a)(4)(C), especially because Mr. Becker was advised previously that this request was baseless and he skipped the required effort to discuss this request with opposing counsel and presented no evidence of any misconduct on the part of opposing counsel.

## CONCLUSION

For the foregoing reasons, International Thunderbird Gaming Corporation respectfully requests that the Court:

(a) deny Mexico's Motion To Compel Discovery and For Sanctions;

(b) deny Mexico's request that Thunderbird's counsel pay Mexico the expenses incurred in making its Motion, including attorney's fees; and

(c) direct Mexico's counsel, Stephan E. Becker, to reimburse Thunderbird its reasonable expenses incurred in preparing this response, including attorney's fees, pursuant to Fed. R. Civ. P. 37(a)(4)(B) and/or 37(a)(4)(C).

Date: August 17, 2007

Respectfully submitted,

/s/ Christopher W. Mahoney
Christopher W. Mahoney (D.C. Bar No. 394416)
Duane Morris LLP
1667 K Street, NW  Suite 700
Washington, DC 20006
Telephone:  (202) 776-7867
Facsimile:   (202) 776-7801


/s/ James D. Crosby
James D. Crosby
13400 Sabre Springs Parkway, Suite 200
San Diego, California 92128
Telephone: (858) 486-0085
Facsimile:  (858) 486-2838


Attorneys for Petitioner
International Thunderbird Gaming Corporation

DM1\1173586.1