UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Arbitration under the North American Free Trade Agreement (NAFTA) between<br><br>INTERNATIONAL THUNDERBIRD GAMING CORPORATION<br><br>       Petitioner,<br><br>vs.<br><br>THE UNITED MEXICAN STATES,<br><br>       Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 06-00748 (HHK/AK)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PETITIONER INTERNATIONAL THUNDERBIRD GAMING CORPORATION'S OPPOSITION TO MOTION FOR LEAVE TO FILE SUPPLEMENTAL REPLY IN SUPPORT OF UNITED MEXICAN STATES' MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS AGAINST PETITIONER INTERNATIONAL THUNDERBIRD GAMING CORPORATION**

   Intent on obtaining post-judgment discovery and sanctions against International Thunderbird Gaming Corporation ("Thunderbird") and its counsel whatever the facts or the law, Respondent United Mexican States ("Mexico") now seeks to show in a "supplemental reply" that recent "developments" support its quest. But the opposite is true. Having reconsidered the requirements of the North American Free Trade Agreement ("NAFTA"), Thunderbird submits that those requirements bar Mexico from obtaining the discovery it seeks while this matter is pending before the Court of Appeals. The plain language of NAFTA, the supreme law of the land, requires that Mexico's Motion and its request to compel discovery and for sanctions be denied.

**STATEMENT OF FACTS**

   On August 3, 2007, without complying with LCvR 7(m), Mexico filed its Motion to Compel Discovery and for Sanctions Against Petitioner International Thunderbird Gaming

Corporation. In it, Mexico seeks to compel discovery purportedly in aid of execution of the arbitral award now on appeal, and requests sanctions against both Thunderbird and its counsel.

On August 17, 2007, Thunderbird filed its Opposition To Respondent United Mexican States' Motion To Compel Discovery and for Sanctions ("Opposition"). In it, Thunderbird showed that Mexico's Motion is unripe and should be dismissed for failure to comply with LCvR 7(m)'s requirement that "counsel shall discuss the anticipated motion with opposing counsel, either by person or by telephone" and that the movant "shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed." *See* Opposition at 5-6.[1] Thunderbird also showed that, just as Mexico's counsel was advised before he filed his Motion, Mexico's request for sanctions against counsel is frivolous because counsel never advised any objectionable conduct on the part of Thunderbird, and the record confirms this. *See* Thunderbird's Opposition at 2-5.[2]

In Thunderbird's Opposition, Thunderbird, upon the advice of counsel, did assert that "Thunderbird recognizes the importance of responding to Mexico's written discovery requests, and commits to doing so within 30 days," and that "Thunderbird also commits to producing a Rule 30(b)(6) deponent at a mutually convenient time and place." *See* Opposition at 6. On September 18, 2007, Mexico's counsel, Mr. Becker, sent an email to Thunderbird's counsel, Mr. Mahoney, copying Thunderbird's San Diego counsel Mr. Crosby, stating that "[w]e have not received the responses or otherwise heard from you regarding them. Please confirm my understanding that the responses are not being provided." *See* Motion at 3.

---

[1] Mexico's August 24, 2007 Reply In Support of Its Motion To Compel Discovery and For Sanctions ("Reply") does not address this argument or explain why Mexico did not comply with LCvR 7(m).

[2] In the face of this record, Mexico is left to complain merely that the "formerly attorney-client privileged" emails that undermine its request for sanctions against counsel were not "previously disclosed to Mexico." Reply at 5. Of course they weren't, but Mexico's counsel was advised previously that any request for sanctions against counsel was entirely without basis. And as Thunderbird showed, had Mexico's counsel complied with LCvR 7(m) and discussed his request for sanctions against counsel with opposing counsel in person or by telephone, this fact would have been made clear to him, and would have dispensed with the need to respond to a baseless request. *See* Opposition at 6. Mexico's Reply does not address this point either.

The next day, in compliance with LCvR 7(m), Mr. Becker telephoned Mr. Mahoney to inquire regarding Thunderbird's discovery responses and to seek Thunderbird's consent to the filing of Mexico's Motion For Leave to File Supplemental Reply.  *See* Exhibit A, attached hereto.  Mr. Mahoney advised that he was waiting to hear back from Mr. Crosby on the status of Thunderbird's discovery responses and that he would convey Mr. Becker's request for consent to Mr. Crosby.  *Id.*  Mr. Mahoney immediately did so.  *Id.*

After the matter was discussed with Thunderbird, two days later, Mr. Mahoney advised Mr. Becker that Thunderbird, at its own initiative and not at the direction of counsel, had reconsidered its earlier position and would not provide discovery responses.  Specifically, by email dated September 21, 2007, Mr. Mahoney informed Mr. Becker that

> I have been advised by my client, International Thunderbird Gaming Corporation, that it has reconsidered its earlier position and, notwithstanding the statement previously made on page 6 of its opposition to your motion to compel (which you reference in your email), the client now does not intend to provide responses to Mexico's discovery requests.  After reconsidering its earlier position, it is now the client's position that under NAFTA Article 1136, a disputing party such as Mexico may not seek enforcement of a final award until a court has dismissed an application to set aside or annul the award and there is no further appeal.  The client's position is that by entering into NAFTA, Mexico expressly consented to the procedures contained in NAFTA and, thus, agreed that it may not seek enforcement of the arbitration award until a court has dismissed an application to set aside the award and there is no further appeal.  The client's position now is that Mexico's discovery requests, which were purportedly propounded "in aid of execution" of the District Court's judgment, are inappropriate because Thunderbird has appealed that judgment and, consequently, the award is not yet binding on Thunderbird and it is premature for Mexico to begin proceedings aimed at enforcing the award.  Indeed, Thunderbird is investigating what remedies may be available under NAFTA for such treaty violations.  Be advised that Thunderbird has directed that its outside counsel represent that this reconsidered position is taken at the direction of Thunderbird and not at the behest of its outside counsel.

3

*See* Exh. 2 to Mexico's Motion. That same day, Mr. Mahoney telephoned Mr. Becker and left a voicemail message indicating that Thunderbird did not consent to the filing of Mexico's Motion.

## ARGUMENT

Although brief, Mexico's Motion is replete with invective, asserting that Thunderbird has "verified" that its earlier position on August 17, 2007 was "disingenuous," that "Thunderbird is unrepentant in flouting the authority of this Court," and that Thunderbird's reconsidered position is "unjustifiable." Motion at 4. Mexico is wrong on all counts.[3]

### A. Reconsidering An Earlier Position Does Not Make That Position "Disingenuous"

In its August 17, 2007 Opposition, Thunderbird, upon the advice of counsel, did represent that it intended to respond to Mexico's discovery requests, which were propounded purportedly in aid of execution of the NAFTA arbitral award now on appeal. At the time it was made, that commitment was genuine, and Mexico provides no evidence to the contrary. Instead, it merely suggests that by reconsidering its position, Thunderbird "verified" that its earlier position was "disingenuous." But Mexico's conclusion does not follow from its premise. Just because Thunderbird reconsidered its position does not mean that its earlier position was disingenuous at the time it was stated. It was genuine then, but has since merely been reconsidered. This change has no bearing on whether Thunderbird's earlier commitment was genuine when it was made. Mexico's unfounded assumption otherwise is just that, and hardly amounts to "compelling circumstances supporting the entry of an order compelling production and imposing sanctions." Motion at 4.

### B. Thunderbird's Position Does Not "Flout the Authority of This Court"

Similarly, there is no basis for Mexico's cryptic charge that "Thunderbird is unrepentant in flouting the authority of this Court." Motion at 4. This Court has not compelled Thunderbird

---

[3] Because Mexico's Motion to Compel Discovery and For Sanctions should be denied for failure to comply with LCvR 7(m), the instant Motion For Leave To File Supplemental Reply should also be denied.

4

to respond to Mexico's discovery requests; consequently, Thunderbird's reconsidered decision not to provide discovery responses does not "flout the authority of this Court."

Mexico seems to argue that because the Court denied Thunderbird's May 7, 2007 Motion to Stay Execution of Judgment and for Protective Order--which similarly argued that under NAFTA Article 1136(3)(b)(ii), efforts to enforce the arbitral award are premature until "there is no further appeal"--Thunderbird is somehow precluded from asserting its reconsidered position on Mexico's motion to compel. Again, Mexico is wrong.

While the Court did issue a summary denial of Thunderbird's Motion to Stay Execution of Judgment and for Protective Order, that summary order did not compel Thunderbird to respond to Mexico's discovery requests. Fed. R. Civ. P. 26(c) provides that if a motion for protective order is denied, "the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery." Here, the Court's June 20, 2007 summary denial did not include an order that Thunderbird provide discovery responses. Thunderbird's reconsidered position on Mexico's motion to compel, therefore, does not flout the Court's earlier summary denial of Thunderbird's request for a stay and protective order.

In any event, even if the Court were to consider Mexico's motion to compel and for sanctions and then grant it, the issue of whether NAFTA bars Mexico's efforts to enforce an arbitral award currently on appeal ultimately will be decided by the Court of Appeals. By asserting that NAFTA does bar such efforts, Thunderbird is not "flouting the authority of this Court" but rather preserving its appellate rights should this Court disagree. Again, such prudent conduct hardly amounts to "compelling circumstances supporting the entry of an order compelling production and imposing sanctions." Motion at 4.

### C. NAFTA Precludes Efforts To Enforce An Arbitral Award That Is On Appeal

Finally, Mexico is wrong to assert that the position now taken by Thunderbird is "unjustifiable." That position is fully supported by the plain text of NAFTA. As Thunderbird

asserted previously,[4] and as Mexico notes in its Motion, by entering into NAFTA, Mexico expressly consented to the procedures set forth in NAFTA Chapter 11, Section B.[5] Thus, Mexico agreed that it "may not seek enforcement of a final award until . . . a court has dismissed or allowed an application to revise, set aside or annul the award *and there is no further appeal*." NAFTA Article 1136(3)(b)(ii) (emphasis added). Because Thunderbird has appealed this Court's February 14, 2007 Order confirming the arbitration award, Mexico may not renege on its NAFTA obligations by beginning proceedings to enforce that award, and may not seek to compel discovery purportedly in aid of execution of that award.

"The words of the treaty delineate the extent of [the contracting parties'] agreement; without prejudice to their existing rights and practices, they bound themselves to comply with any request for judicial assistance that did comply with the treaty's procedures." *Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522, 538 (1987). As this Court has observed, both international treaties and the Federal Rules of Civil Procedure are part of "the supreme law of the land" under the United States Constitution and, absent a direct conflict, the court's duty is to enforce them both. *Laker Airways Ltd. v. Pan American World Airways*, 103 F.R.D. 42, 49 (D.D.C. 1984) (citations omitted). *See also, United States v. Decker*, 600 F.2d 733, 737 (9th Cir. 1979) ("It is the role of the judiciary to interpret international treaties and to enforce domestic rights arising from them.").[6]

---

[4] *See* Memorandum of Law in Support of Petitioner International Thunderbird Gaming Corporation's Motion To Stay Execution of Judgment and For Protective Order at 4.

[5] NAFTA Article 1122(1) provides that "[e]ach party consents to the submission of a claim to arbitration in accordance with the procedures set out in this Agreement." *See* Exhibit A to Memorandum of Law In Support of Petitioner International Thunderbird Gaming Corporation's Motion to Stay Execution of Judgment and For Protective Order.

[6] The Court's duty is also rooted in comity, which "refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states. . . .  Nothing would be more inconvenient, in the promiscuous intercourse and practice of mankind, than that what was valid by the laws of one place, should be rendered of no effect elsewhere, by a diversity of law. . . ." *Societe National Industrielle Aerospatiale*, 482 U.S. at 544 n.27.

Here, NAFTA Article 1136(3)(b)(ii), part of the supreme law of the land, does not directly conflict with Fed. R. Civ. P. 69(a) and, thus, this Court's duty is to enforce both provisions. This would allow Mexico, under Fed. R. Civ. P. 69(a), to seek discovery in aid of execution of the arbitral award, but only after "there is no further appeal" of that award, as set forth in NAFTA Article 1136(3)(b)(ii). To compel Thunderbird to respond to Mexico's discovery requests while the appeal of the award is pending would render NAFTA Article 1136(3)(b)(ii) nugatory. However, "[t]reaties should be construed so as to effect their purposes, . . . and to be consistent, insofar as possible, with coexisting statutes." *Laker Airways Ltd.*, 103 F.R.D. at 49.

Indeed, insofar as NAFTA and the Federal Rules of Civil Procedure are both the supreme law of the land under the Constitution, ordinarily "no paramount authority is given to one over the other" but "the last expression of the sovereign will must control." *In re the Matter of Fotochrome, Inc.*, 377 F. Supp. 26, 31 (E.D.N.Y. 1974) (quoting *The Chinese Exclusion Case*, 130 U.S. 581, 600 (1889)). As the supreme law of the land, therefore, subsequent treaty provisions "may supersede prior inconsistent acts of Congress." *Swearingen v. United States*, 565 F. Supp. 1019, 1021 (D. Colo. 1983). *See also Cook v. United States*, 288 U.S. 102, 118 (1933) ("The Treaty, being later in date than the Act of 1922, superseded, so far as inconsistent with the terms of the Act, the authority which had been conferred by [the Act]."). As the *Fotochrome, Inc.* court observed in ruling that an international treaty's provisions superseded an earlier statute (the 1938 Bankruptcy Act),

> International trade is so important to our economy and to the peace and welfare of the world that our law is justified in assuaging other nations' suspicions by the firm enforcement of treaties we find applicable. . . . "The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts. . . ." International commerce has grown too large and the world too small for American courts to disregard the law of nations, even in favor of the Bankrutpcy Act.

*In re the Matter of Fotochrome, Inc.*, 377 F. Supp. at 32 (citations omitted).

7

Congress approved NAFTA in 1993, long after the 1970 amendment to Fed. R. Civ. P. 69(a) that allowed "discovery" in aid of execution. *Xerox Corp. v. United States*, 423 F.3d 1356, 1358 (Fed. Cir. 2005).  Presumably, Congress was aware of the discovery provision of Rule 69(a) when it subsequently approved NAFTA Article 1136(3)(b)(ii)'s requirement that no effort be made to enforce an arbitral award "until . . . there is no further appeal." Thunderbird submits that both the treaty and the statute can be read in harmony to allow discovery in aid of execution but only after Thunderbird's pending appeal is resolved.  To the extent the statute conflicts with the treaty, the treaty is "the last expression of the sovereign will" and, therefore, must control.  In either case, Mexico is precluded from seeking discovery in aid of execution of an arbitral award that is now on appeal.  Its Motion to Compel Discovery and For Sanctions, therefore, as well as its Motion For Leave To File Supplemental Reply, should be denied.

## CONCLUSION

For the foregoing reasons, Thunderbird respectfully requests that the Court deny Mexico's Motion For Leave To File Supplemental Reply, and that the Court deny Mexico's Motion To Compel Discovery and For Sanctions.

Respectfully submitted,

Date:  October 2, 2007

/s/ Christopher W. Mahoney
Christopher W. Mahoney (D.C. Bar No. 394416)
Duane Morris LLP
1667 K Street, NW  Suite 700
Washington, DC 20006
Telephone:  (202) 776-7867
Facsimile:   (202) 776-7801

/s/ James D. Crosby
James D. Crosby
13400 Sabre Springs Parkway, Suite 200
San Diego, California 92128
Telephone: (858) 486-0085
Facsimile:  (858) 486-2838

Attorneys for Petitioner
International Thunderbird Gaming Corporation

Case 1:06-cv-00748-HHK    Document 30    Filed 10/02/2007    Page 9 of 10

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of October 2007, Petitioner International Thunderbird Gaming Corporation's Opposition to Motion for Leave to File Supplemental Reply in Support of United Mexican States' Motion to Compel Discovery and for Sanctions Against Petitioner International Thunderbird Gaming Corporation and Proposed Order were served via this Court's ECF system and served via First Class Mail, postage prepaid, on the following:

>Stephan E. Becker
>Pillsbury Winthrop Shaw Pittman LLP
>2300 N Street, N.W.
>Washington, DC 20037-1122

<u>/s/ Christopher W. Mahoney</u>